UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NATHEAULEEN MASON, *et al.,*

      Plaintiffs,                                  Case No. 05-73943


v.                                              Hon. John Corbett O'Meara


JENNIFER GRANHOLM, *et al.,*

      Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
<u>DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Before the court are Plaintiffs' motion for partial summary judgment, filed July 14, 2006,

and Defendants' cross-motion for summary judgment, filed August 4, 2006.  Defendant

Chapman filed a separate brief on August 9, 2006.  With leave of the court, *amicus curiae*, the

American Civil Liberties Union Fund of Michigan and Women Lawyers Association of

Michigan, filed a brief in support of Plaintiffs' position on August 9, 2006.  The court heard oral

argument on August 31, 2006, and took the matter under advisement.  For the reasons set forth

below, the court GRANTS Plaintiffs' motion for partial summary judgment and DENIES

Defendants' cross-motion.

**<u>BACKGROUND FACTS</u>**

Plaintiffs challenge an amendment to the Michigan Elliott-Larsen Civil Rights Act

("ELCRA") that excludes prisoners from protection from discrimination.  The ELCRA provides,

in part, that "the full and equal utilization of public accommodations, public service, and

educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right." M.C.L. §37.2102(1).  The statute also provides that a person shall not

> Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

M.C.L. § 37.2302(a).

In Neal v. Michigan Dept. of Corrections, 232 Mich. App. 730, 735, 592 N.W.2d 370 (1998), the Michigan Court of Appeals held that the ELCRA barred gender-based discrimination against prison inmates, because MDOC's correctional facilities are places of "public service" within the meaning the statute.  The court rejected the MDOC's argument that the act was not intended to apply to prisoners: "Because, as our Supreme Court has stated, the protections of subsection 302(a) of the Civil Rights Act were intended to be coextensive with the Equal Protection and Antidiscrimination Clauses of the Michigan Constitution, and because prisoners do not lose their right to equal protection by virtue of their status as inmates, we can only conclude that the Legislature also intended all persons – including inmates – to be protected under subsection 302(a)." Neal, 232 Mich. App. at 739-40.

In response to Neal, the Michigan legislature amended the ELCRA on March 10, 2000, providing that "public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment." M.C.L. 37.2301(b).  The legislature included an "enacting section," which provides:

-2-

> Enacting section 1.  This amendatory act is curative and intended
> to correct any misinterpretation of legislative intent in the court of
> appeals decision <u>Neal</u> v <u>Department of Corrections</u>, 232 Mich App
> 730 (1998).  This legislation further expresses the original intent of
> the legislature that an individual serving a sentence of
> imprisonment in a state or county correctional facility is not within
> the purview of this act.

<u>Id.</u>  Although the legislature identified the amendment as "curative," there is no evidence

derived from the statutory language or legislative history suggesting that the legislature's

original intent was in fact misinterpreted in <u>Neal</u>.  <u>See</u> 1976 Journal of the House 3706-709 (Dec.

16, 1976); 1976 Journal of the Senate 2541-46 (Dec. 15, 1976).

The ELCRA is Michigan's exclusive statutory mechanism for enforcing the Michigan

Constitution's guarantee of equal protection of the laws:

> No person shall be denied the equal protection of the laws; nor
> shall any person be denied enjoyment of his civil or political rights
> or be discriminated against in the exercise thereof because of
> religion, race, color or national origin.  The legislature shall
> implement this section by appropriate legislation.

Mich. Const. of 1963, art. I, § 2.  By its terms, this constitutional provision requires the Michigan

legislature to provide legislation that will redress discrimination.  The ELCRA is that legislation.

<u>See</u> <u>Department of Civil Rights ex rel Forton v. Waterford Twp. Dep't of Parks and Recreation</u>,

425 Mich. 173, 188 (1986); <u>Neal</u>, 232 Mich. App. at 739 ("[I]nsofar as subsection 302(a) of the

Civil Rights Act governs "public service," it is essentially a codification of the constitution's

Equal Protection and Antidiscrimination Clauses, broadened to include categories not covered

under the constitution, such as age, sex, and marital status.").

Plaintiffs assert that the ELCRA amendment deprives them of equal protection of the

laws in violation of the Fourteenth Amendment to the United States Constitution.  Plaintiffs have

moved for partial summary judgment in their favor on this issue.  In their complaint, Plaintiffs

also challenge the ELCRA amendment as a bill of attainder and as violations of the International

Covenant on Civil and Political Rights and the Convention against Torture.  Defendants have

filed a cross motion for summary judgment, contending that none of Plaintiffs' challenges to the

ELCRA amendment have merit.

## LAW AND ANALYSIS

### I.    Equal Protection

"The Fourteenth Amendment's promise that no person shall be denied the equal

protection of the laws must coexist with the practical necessity that most legislation classifies for

one purpose or another, with resulting disadvantage to various groups or persons." Romer v.

Evans, 517 U.S. 620, 631 (1996).  "We have attempted to reconcile the principle with the reality

by stating that, if a law neither burdens a fundamental right nor targets a suspect class, we will

uphold the legislative classification so long as it bears a rational relation to some legitimate end."

Id.

In Romer, the Supreme Court struck down an amendment to the Colorado Constitution

that prohibited legislative, executive, or judicial action at any level of state or local government

designed to protect gays and lesbians.  The court recognized that, under the "rational basis" level

of scrutiny, "a law will be sustained if it can be said to advance a legitimate government interest,

even if the law seems unwise or works to the disadvantage of a particular group, or if the

rationale for it seems tenuous." Id. at 632.  Even under this deferential standard, the Court found

the amendment to the Colorado Constitution violated the Equal Protection clause:

> Amendment 2 confounds this normal process of review.  It is at
> once too narrow and too broad.  It identifies persons by a single

-4-

> trait and then denies them protection across the board.  The
> resulting disqualification of a class of persons from the right to
> seek specific protection from the law is unprecedented in our
> jurisprudence.

Romer, 517 U.S. at 633.  The Court further explained:

> It is not within our constitutional tradition to enact laws of this
> sort.  Central both to the idea of the rule of law and to our own
> Constitution's guarantee of equal protection is the principle that
> government and each of its parts remain open on impartial terms to
> all who seek its assistance.  "Equal protection of the laws is not
> achieved through indiscriminate imposition of inequalities."
> Respect for this principle explains why laws singling out a certain
> class of citizens for disfavored legal status or general hardships are
> rare.  A law declaring that in general it shall be more difficult for
> one group of citizens than for all others to seek aid from the
> government is itself a denial of equal protection of the laws in the
> most literal sense.

Id. (citations omitted).

The MDOC does not argue that the ELCRA amendment advances legitimate penological

interests, such as maintaining prison order.  See generally Turner v. Safley, 482 U.S. 78, 89

(1987).  Rather, the MDOC contends that the ELCRA amendment "does advance legitimate

interests such as protecting the public fisc, preventing windfall awards, reducing judicial

intervention in the management of prisons, deterring frivolous lawsuits by prisoners and

reducing trivial or inconsequential suits."  Defs.' Br. at 6-7.  In support of its argument that the

ELCRA amendment is constitutional, MDOC cites to several Sixth Circuit cases upholding

challenges to the federal Prison Litigation Reform Act, which placed some restrictions on

prisoners' ability to file civil rights claims. See, e.g., Hampton v. Hobbs, 106 F.3d 1281 (6th Cir.

1997) (upholding fee provisions of the PLRA); Wilson v. Yaklich, 148 F.3d 596, 604 (6th Cir.

1998) (upholding "three strikes" provision of the PLRA); Hadix v. Johnson, 230 F.3d 840 (6th

-5-

Cir. 2000) (upholding cap on attorney fees under PLRA).

In Hampton, for example, the Sixth Circuit found that the filing fee requirements of the

PLRA had a rational relationship to a legitimate governmental interest:

> The legislation was aimed at the skyrocketing numbers of claims
> filed by prisoners – many of which are meritless – and the
> corresponding burden those filings have placed on the federal
> courts. Thus, Congress sought to put in place economic incentives
> that would prompt prisoners to "stop and think" before filing a
> complaint.

Hampton, 106 F.3d at 1286-87.  The court further noted that the "filing fee is small enough not

to deter a prisoner with a meritorious claim, yet large enough to deter frivolous claims and

multiple filings." Id.  The intent of the filing fee provisions of the PLRA was that "[p]risoners

will have to make the same decision that law-abiding Americans must make: Is the lawsuit worth

the price?" Id. (citing 141 Cong. Rec. S7526 (daily ed. May 25, 1995) (statement of Sen. Kyl)).

In contrast to the PLRA provisions upheld in Hampton and other cases, the ELCRA

amendment paints with a much broader brush.  Rather than placing some limits on prisoner

litigation and deterring frivolous suits, the ELCRA amendment completely precludes prisoners

from challenging the conditions of their confinement or the discriminatory practices of the

MDOC under the ELCRA, while they are incarcerated or after their release, and whether their

claims are meritorious or not.[1]  The amendment does not, like the PLRA amendments, essentially

---

[1] Prisoners may file claims under 42 U.S.C. § 1983 and state tort law.  Defendants argue that as long as a judicial forum is available, prisoners' right of access to the courts has not been violated. See Wilson v. Yaklich, 148 F.3d 596, 605 (6th Cir. 1998). This argument does not speak to the issue of whether the ELCRA amendment is rationally related to a legitimate government interest. See id. at 604-605.  Because the court finds that the ELCRA amendment does not survive rational basis scrutiny, the court does not address Plaintiffs' other argument that prisoners' fundamental right of access to the courts has been infringed.

place prisoners in the same position with respect to filing suit as other citizens.  Rather, the amendment forecloses the vindication of prisoners' equal protection rights under Michigan law.[2]

Viewing the statute in the context of this case, the ELCRA amendment essentially permits the state to discriminate against female prisoners without fear of accountability under Michigan's civil rights law.  Given the state's abhorrent and well-documented history of sexual and other abuse of female prisoners, the court finds this amendment particularly troubling.  See generally Everson v. MDOC, 391 F.3d 737, 741 (6th Cir. 2005) ("The problem of sexual abuse and other mistreatment of female inmates has long plagued the MDOC.").  It appears that the state legislature has not attempted to deter frivolous lawsuits, but rather preclude meritorious ones.[3]

Moreover, while deterring frivolous suits and protecting the public treasury are legitimate government interests, the ELCRA amendment is too broad to be rationally related to these interests.  See Romer, 517 U.S. at 635 (rejecting freedom of association and other justifications for Colorado's Amendment 2, stating that the "breadth of the amendment is so far removed from these particular justifications that we find it impossible to credit them").  The ELCRA amendment denies prisoners the basic protections against discrimination that all others are

_____

[2] The Michigan Supreme Court has held that courts may not infer any damages remedy arising directly from Article I, Section Two of the Michigan Constitution, in the absence of statutory authority.  Lewis v. Michigan, 464 Mich. 781, 786-87, 829 N.W.2d 868 (2001).  However, it is well recognized that damages are in many cases the only way to effectively remedy constitutional violations.  See, e.g., Davis v. Passman, 442 U.S. 228, 245 (1979) ("Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty.") (citing Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 395-97 (1971)).

[3] In so concluding, the court does not intend to and has taken no position on the merits of Plaintiffs' claims here.

afforded under Michigan law, *as required by* Article I, Section Two of the Michigan Constitution, which provides that "The legislature shall implement this section by appropriate legislation." There is no rational basis for denying *all* prisoners (including those who have been released) – and no one else – the ability to seek redress for illegal discrimination that occurred in prison.[4] As the <u>Romer</u> court explained, "[a] law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense." <u>See also</u> <u>Hadix</u>, 230 F.3d at 843 ("[R]ational basis review is not a rubber stamp of all legislative action, as discrimination that can *only* be viewed as arbitrary and irrational *will* violate the Equal Protection Clause.") (emphasis in original).

Accordingly, the court concludes that the ELCRA amendment violates prisoners' equal protection rights and is unconstitutional.

## II.   <u>Bill of Attainder and Treaty Violations</u>

Plaintiffs also claim that the ELCRA amendment violates the constitutional provision against bills of attainder and that it violates the International Covenant on Civil and Political Rights and the Convention against Torture. Defendants seek summary judgment on these claims. Because the court has determined that the ELCRA amendment does not survive equal protection analysis, it is not necessary to address Plaintiffs' other challenges to this legislation.

---

[4] Other options exist for deterring frivolous filings by prisoners. <u>See</u>, <u>e.g.</u>, M.C.L. § 600.5501, <u>et seq.</u> (1999) (requiring, <u>inter alia</u>, exhaustion of administrative remedies and permitting courts to dismiss frivolous complaints <u>sua sponte</u>). <u>See also</u> 28 U.S.C. § 1915.

## **ORDER**

IT IS HEREBY ORDERED that Plaintiffs' July 14, 2006 motion for partial summary judgment is GRANTED.

IT IS FURTHER ORDERED that Defendants' August 4, 2006 cross-motion for summary judgment is DENIED.


s/John Corbett O'Meara
United States District Judge


Dated:  January 23, 2007


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, January 23, 2007, by electronic or ordinary mail.


s/William Barkholz
Case Manager